## JOGWICK v. UNITED STATES.

### No. 5216.

Circuit Court of Appeals, Fourth Circuit.

May 25, 1944.

William Bruce Hoff, of Parkersburg, W. Va., for appellant.

C. Brooks Deveny, Asst. U. S. Atty., of Clarksburg, W. Va., (Joe V. Gibson, U. S. Atty., of Kingwood, W. Va., on the brief), for appellee.

Before PARKER, DOBIE, and NORTHCOTT, Circuit Judges.

NORTHCOTT, Circuit Judge.

This is an action instituted by the appellee, the United States of America, in the District Court of the United States for the Northern District of West Virginia, at Fairmont, in April 1943, against the appellant, Walter Emil Albert Jogwick. The object of the proceedings was to cancel the naturalization certificate of the appellant, formerly a subject of Germany, which certificate was issued on May 24, 1932, in the District Court of the United States for the Northern District of West Virginia, at Parkersburg.

The appellant filed his answer to the complaint and in August 1943 a hearing was had at which evidence was taken on behalf of both the Government and the defendant and on August 24, 1943, the judge below made his findings of fact and stated his conclusions of law. On August 26, 1943, the judge filed a written opinion finding that the naturalization certificate of the appellant should be cancelled and on the same day an order was entered cancelling the defendant's certificate of naturalization and directing him to surrender said certificate. From this action of the court below this appeal was taken.

As found by the judge the following facts appear: Jogwick was born in Ger-

many and came to this country, accompanied by his wife, in 1926 when he was 31 years of age; he had served in the first world war in the German Army and had six brothers now in Germany most of them serving in the German Army in the present war—his father has died since he came to the United States; his mother was still living in Danzig when last heard from; he was a well educated man and was a draughtsman; he secured employment in a manufacturing plant in Parkersburg, West Virginia, at good wages; bought a home, was active in the First Lutheran Church of Parkersburg, and until he began to be investigated was active in the Boy Scout movement; he had two sons, both born in this country, one of whom was a Boy Scout. Jogwick behaved as a good citizen and there was no complaint about him until the outbreak of the second world war. His fellow employees who worked with him in the same room, where he was in charge, testified that he made various remarks showing strong sympathy with the German cause before the entrance of the United States into the war.

A number of these statements the defendant denied and others he sought to explain, some of which explanations, it must be said, were not very satisfactory. After the investigation of Jogwick was started he changed his expressions of loyalty to Germany and proclaimed his willingness to fight for the United States, bought war bonds and donated blood. A number of citizens who had known him for years testified as to his exemplary character and good citizenship. He never had been charged with any violation of the law and there is no evidence in the record of any subversive activities or any action of disloyalty other than his talk which was, to say the least, ill advised.

The evidence shows that he was drawn into arguments with his fellow employees, especially with a former Canadian who was strongly Pro-British, and that many things were done by these witnesses, who testified against him, to aggravate and annoy him. On several occasions swastikas were placed on his desk and at one time these fellow employees lined up in the hall until he came to work and then marched into his office saying, "Heil Hitler" as they came in. These actions goaded Jogwick into saying things that he otherwise might not have said but that scarcely excused the expressions he made.

The sole question involved on this appeal is whether the facts as above set out justified the court below in ordering the cancellation of Jogwick's naturalization certificate.

■ When citizenship is granted by the courts of this country to an alien it is a solemn and binding act giving to the naturalized citizen all the rights of a native born citizen. This act conferring these rights upon him is not to be set aside or revoked except upon clear and conclusive evidence of fraud practiced in the securing of the naturalization. Such a citizen has every right that the native born citizen has including the right to express his views upon any subject about which he is entitled to have views. If he commit any treasonable act or gives expression to any treasonable view he can be prosecuted just as can a native born citizen. The naturalized citizen is not governed by any different rule of conduct, after citizenship is conferred upon him, than that which controls the native born citizen.

The appellant, Jogwick, conducted himself as a good citizen before citizenship was conferred upon him and also until the outbreak of the present world war he conducted himself in an exemplary manner; was an active member of his church; raised his children in the American way of life; was respected by his neighbors; worked hard and in every way had a record of which any citizen might be proud. To mar this record, taking everything claimed by the Government to be true, he was guilty of rash talk; expressed opinions that he should not have expressed and made remarks, that were, to say the least, unjustified and uncalled for. In all that Jogwick did there can be found no evidence of any fraud in the procurement of his citizenship except a possible surmise, which is not sufficient to set aside the solemn act of his naturalization.

The remarks by Jogwick were made, as shown by the record, under great provocation. He was undoubtedly goaded and tormented into making most, if not all, of these remarks.

His evidence at the trial showed that he was at least sorry, if not repentant, for the things he had said. He bought war bonds; donated his blood and expressed his willingness to fight for this country against Germany, where his brothers and his mother were.

1000

■ Under the principles laid down in Schneiderman v. United States, 320 U.S. 118, 63 S.Ct. 1333, 87 L.Ed. 1796, decided a few days before the judge below handed down his opinion in this case, and not referred to in the Judge's discussion of the authorities, the evidence against the appellant was not sufficient to justify the cancellation of his naturalization as being procured by fraud. In the case of Meyer v. United States, 5 Cir., 141 F.2d 825, and in the case of Orth v. United States, 4 Cir., 142 F.2d 9, will be found a thorough discussion by Circuit Judge Hutcheson and Circuit Judge Dobie of the authorities controlling the point here involved and it is not necessary to go over the same ground here. The Schneiderman case, supra, is controlling on us and in the light of the principles there laid down, supported by the Meyer and Orth cases, supra, the judgment of the court below is reversed.